# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action Number |
| | ) 06-0040-01-CR-W-SOW |
| Reubin R. Sanders, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS filed April 11, 2006 (Doc. #22) by defendant Reubin R. Sanders ("Sanders"). On May 12, 2006, the undersigned held an evidentiary hearing on Sanders' motion. Sanders was present and was represented by his counsel, Assistant Federal Public Defender Stephen C. Moss. The government was represented by Assistant United States Attorney Stefan C. Hughes. At the evidentiary hearing, the government called Officer Tony Uredi of the Jackson County, Missouri Sheriff's Department. One exhibit, a diagram of the arrest scene [marked as Government's Exhibit #2], was offered and received into evidence. On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

### PROPOSED FINDINGS OF FACT

1. On January 23, 2006, Tony Uredi ("Officer Uredi") was a patrol officer with the Jackson County, Missouri Sheriff's Department. Tr. 4-5.

2. On that date, at approximately 6:38 p.m., Officer Uredi observed a red Plymouth Acclaim, license number 866 YHH, traveling eastbound on Truman Road in Kansas City, Missouri. Tr. 5.

3. Officer Uredi recognized the vehicle and the driver of the vehicle, Donald Wilson ("Wilson"), from a vehicle stop conducted by Officer Uredi the prior month. Tr. 5-6, 15.

4. Based on that prior stop, Officer Uredi knew that Wilson's Missouri driver's license was suspended. Tr. 6, 16-17.

5. Officer Uredi decided to stop the Plymouth Acclaim based on his knowledge of Wilson's suspended driver's license. Tr. 16-17.

6. Officer Uredi then began following the Plymouth Acclaim and radioed in the license plate information. Tr. 6.

7. Officer Uredi was initially[1] given information that the vehicle license plate number was not registered to a Plymouth Acclaim. Tr. 6, 16.

8. When the Plymouth Acclaim was at or the near the intersection of Stark and Blue Ridge, Officer Uredi activated his lights in order to initiate the traffic stop. Tr. 7, 18-19.

9. The Plymouth Acclaim continued traveling for approximately 700 to 800 feet before finally pulling into a parking lot next to the Cimarron Apartments. Tr. 7, 19.

10. Officer Uredi considered the area around the Cimarron Apartments to be a high crime area. Tr. 27-29.

11. Officer Uredi pulled his squad car into the parking lot and parked his car about 6-8 feet behind the Plymouth Acclaim. Tr. 12, 21; Govt. Ex. #2.

12. Officer Uredi noted that were multiple occupants in the Plymouth Acclaim. Tr. 8.

13. After pulling in behind the Plymouth Acclaim, Officer Uredi began to radio the dispatcher to inform the dispatcher that he was engaged in a traffic stop. Tr. 9.

14. While Officer Uredi was radioing his location, the passenger in the front seat of the Plymouth Acclaim began exiting the vehicle. Tr. 9, 12, 22.

15. The passenger was Sanders. Tr. 13-15, 22.

---

[1] Subsequently, after the traffic stop and arrest, Officer Uredi was given information that the license plate number was registered to a Plymouth Acclaim. This error, however, does not affect the validity of the traffic stop since Officer Uredi was going to stop the Plymouth Acclaim because Wilson did not have a valid driver's license. Moreover, the information, although later proven to be incorrect, formed part of the totality of the circumstances being considered by Officer Uredi during the traffic stop.

2

16. Officer Uredi immediately got out of his car and ordered Sanders to get back in the vehicle. Tr. 9, 12.

17. After yelling the order three times, Sanders returned to the Plymouth Acclaim. Tr. 9, 14, 27.

18. During this encounter, Officer Uredi could not see Sanders' face (*i.e.*, he did not turn around and look at the officer) nor could Officer Uredi see Sanders' hands. Tr. 9-10, 13, 14.

19. Sanders' actions caused Officer Uredi to "worry for [his] own safety." Tr. 10, 14, 23.

20. In this type of a vehicle stop, it is Officer Uredi's usual practice to order all vehicle occupants ro remain in the vehicle until the completion of the stop. Tr. 25-26.

21. Officer Uredi does this for officer safety because he does not want "somebody to get out of [his] sight." Tr. 26.

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be

---

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884-85. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

4

The rights protected by the Fourth Amendment are implicated in this case by Officer Uredi's decision to stop the automobile being driven by Wilson and thereafter to detain the occupants of the automobile. *Delaware v. Prouse*, *supra*, 440 U.S. at 653, 99 S.Ct. at 1396. However, it well-settled that "[a]n investigation stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). In this case, Officer Uredi had the requisite reasonable suspicion to stop a vehicle that he believed was being operated by an individual who did not possess a valid driver's license – a violation of the traffic laws. *Compare United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002).

Sanders does not contest Officer Uredi's right to stop the Wilson vehicle (nor to detain Wilson). However, Sanders contends that "a *Terry* stop based on a traffic violation committed by the driver of a vehicle confers no legal authority to detain its occupants." Under the facts of this case, the Court disagrees.

In approaching the issue the Court is mindful that the touchstone of "analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms,* 434 U.S. 106, 108-09 (1977) (*quoting Terry v. Ohio,* 392 U.S. 1, 19 (1968)). Whether a seizure is reasonable turns "'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Mimms,* 434 U.S. at 109 (*quoting United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975)). To that end, it is well established that an officer effecting a lawful traffic stop may order the driver and the passengers <u>out of a vehicle</u> without

5

violating the Fourth Amendment. *Maryland v. Wilson,* 519 U.S. 408, 410 (1997).[3] Thus, the legal issue herein is whether an officer's discretionary decision to order the driver and the passengers to remain in the vehicle is somehow more intrusive and an unlawful seizure under the Fourth Amendment.

Since *Wilson*, several courts have considered whether an officer's actions in ordering passengers to remain in a stopped vehicle violate the Fourth Amendment. *See*, *e.g.*, *United States v. Williams*, 419 F.3d 1029, 1032 (9th Cir. 2005); *Rogala v. District of Columbia,* 161 F.3d 44, 53 (D.C.Cir.1998); *United States v. Moorefield,* 111 F.3d 10, 13 (3d Cir.1997). Each of these courts determined that there was no Fourth Amendment violation. The Court agrees with the conclusions reached in those cases. As succinctly noted by the Ninth Circuit:

> The intrusion here is minimal and the rationale of the Court in *Wilson* and *Mimms* is instructive. As the *Wilson* Court noted, there is little infringement on the passenger's liberty in ordering him or her out of the car because only the passenger's location during the stop is affected. We think the difference in ordering the passenger back inside the car is immaterial.

*Williams*, 419 F.3d at 1033.

The Court concludes that under these circumstances, an order to remain in a stopped vehicle is but a "mere inconvenience," *Terry,* 392 U.S. at 17, that falls far short of a "serious

---

[3] In *Wilson,* the Supreme Court considered whether police officers can order a passenger out of a lawfully stopped vehicle under the Fourth Amendment, balancing the passenger's liberty interest with the public interest in officer safety. The *Wilson* Court recognized that the passenger's liberty interests are stronger than the interests of the driver because, although there is probable cause to stop the driver based on the traffic infraction, "there is no such reason to stop or detain the passengers." Wilson, 519 at 413. However, the Court reasoned that the additional intrusion was minimal because "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle," and thus, "[t]he only change in [the passengers'] circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car." *Id.* at 413-14.

intrusion upon the sanctity of the person," or even a "petty indignity." *Mimms,* 434 U.S. at 111. When balanced against the "weighty" concerns for officer safety,[4] no compelling case for a Fourth Amendment violation can be made.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Sanders' MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS filed April 11, 2006 (Doc. #22).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                 */s/ John T. Maughmer*
                 **John T. Maughmer**
                 **United States Magistrate Judge**

---

[4] The *Wilson* Court held that the strong public interest in officer safety outweighed the minimal intrusion on a passenger's personal liberty interest. *Wilson,* 519 U.S. at 413-15. Drawing primarily on the logic of *Mimms,* the *Wilson* Court emphasized the important public interest in maintaining officer safety, specifically quoting statistics of assaults and homicides on officers while enforcing traffic laws. *Id.* at 413, 117 S.Ct. at 882; *see also Mimms,* 434 U.S. at 110, 98 S.Ct. at — ("[I]t [is] too plain for argument that [public concern for] . . . the safety of the officer [ ] is both legitimate and weighty.").